**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 18-101** |
| **MEHDI NIKPARVAR-FARD et al.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTIONS
TO DISMISS AND TO COMPEL DISCOVERY**

## I.    INTRODUCTION

Defendant Nikparvar-Fard, alleging *Brady* violations and a violation of his 6th

Amendment right to a speedy trial, seeks the dismissal of the indictment. D.D.E 462. In the same

motion, Nikparvar-Fard also seeks an order compelling production of discovery from the

government. Defendants Hollis (D.D.E 465), Brown (D.D.E 466), and Cortez (D.D.E 467) join

in the motion. Defendant White joins in the motion (D.D.E 468) and seeks dismissal of the

indictment and exclusion of certain evidence in a separately filed motion (D.D.E 464). The

defendants misstate the nature of previous discovery productions and conflate the government's

*Brady* and *Giglio/Jencks* obligations. Furthermore, the defendants ignore the effects of the

Covid-19 emergency and the complexity of this case in their speedy trial arguments. As there has

been no *Brady* violation, and the delays in bringing this matter to trial were largely outside the

control of the prosecution, the government respectfully requests this Court deny the defendants'

various motions.

## II.    BACKGROUND

On December 19, 2018, Mehdi Nikparvar-Fard ("Nikparvar-Fard") was arrested on a

one-count indictment charging a violation of 21 U.S.C. § 846.  On January 9, 2019, a grand jury

returned a five-count superseding indictment charging Nikparvar-Fard, and twelve additional

defendants, with violations of 21 U.S.C. § 856, 18 U.S.C. § 2, and 21 U.S.C. § 846.  The charges

arise from the defendant's operation of four Advanced Urgent Care (AUC) facilities located in

the Eastern District of Pennsylvania.  The defendants are accused of maintaining these

businesses for the purpose of illegally distributing controlled substances outside the usual course

of professional practice and for no legitimate medical purpose and conspiring with certain

employees to illegally distribute controlled substances to the public.

The government filed a motion to declare this matter a complex case, the Court granted

that motion, and a jury trial was scheduled for April 20, 2020. The trial has been continued from

April 20, 2020, to June 15, 2020, to December 7, 2020, to June 7, 2021, to October 4, 2021, to

January 20, 2022, and to May 31, 2022, all due to COVID-19.  Trial is currently scheduled for

January 9, 2023.

## III.   DISCUSSION

### A.  Motion to Dismiss for *Brady* Violations

Defendants seek the extraordinary remedy of dismissal of the indictment based upon

purported violations of the government's *Brady* obligations. The defendants' argument

mischaracterizes the nature of previous discovery productions, misunderstands what constitutes

*Brady* material, and utterly fails to meet its burden to demonstrate any one of the required

factors. The various defendants' requests for dismissal should be denied.

In *Brady v. Maryland*, the Supreme Court held that a defendant's right to due process is

violated when the prosecution suppresses material evidence that would be favorable to the

defendant in a criminal case. 373 U.S. 83, 87 (1963). The elements of a *Brady* violation are: (1)

the government suppressed evidence, (2) the suppressed evidence is favorable to the defendant,

and (3) the evidence is material (i.e., the defendant was prejudiced as a result of the

2

suppression). *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *United States v. Walker,* 657

F.3d 160, 185 (3d. Cir. 2011)(*quoting Lambert v. Blackwell*, 387 F.3d 210, 252 (3d. Cir 2004)).

The typical *Brady* case contemplates that the prosecution completely failed to disclose

favorable evidence to the defendant. *See, e.g.*, *Cone v. Bell*, 556 U.S. 449, 451 (2009); *Kyles v.*

*Whitley*, 514 U.S. 419, 422 (1995). In rare circumstances, a belated disclosure of *Brady* material

before or during trial can deprive a defendant of his due process rights. *See Joseph v. Coyle*, 469

F.3d 441, 472 (6th Cir. 2006); *see also United States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993)

(stating that "due process requires only that disclosure of exculpatory material be made in

sufficient time to permit the defendant to make effective use of that material at trial"). In such

circumstances, the defendant faces a higher hurdle than in a failure to disclose case. *Joseph*, 469

F.3d at 472. Accordingly, a defendant in a belated disclosure case must show that the "delay

itself cause[d] prejudice," in addition to showing that the evidence was otherwise material to his

innocence or guilt. *O'Hara v. Brigano*, 499 F.3d 492, 503 (6th Cir. 2007) (quoting *United States*

*v. Bencs*, 28 F.3d 555, 561 (6th Cir. 1994)). Even where the government belatedly discloses

*Brady* material during trial, if the defendant still receives it in such a way that he can effectively

use it, due process is not violated and *Brady* is not contravened. *United States v. Johnson*, 816

F.2d 918, 924 (3d. Cir. 1987); *See also United States v. John*, 391 F.Supp. 3d 458 (E.D. Pa 2019)

(No *Brady* violation where impeachment evidence produced seven days into jury trial, after

witness testified).

"[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable

probability that, had the evidence been disclosed, the result of the proceeding would have been

different." *Cone v. Bell*, 556 U.S. 449, 469–70 (2009). "A 'reasonable probability' of a different

result is ... shown when the government's evidentiary suppression 'undermines confidence in the

outcome of the trial.'" *Kyles*, 514 U.S. at 434. (quoting *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

While retrial is normally the most severe sanction available for a *Brady* violation, where a defendant can show both willful misconduct by the government, and prejudice, dismissal may be proper. *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 255 (3d. Cir. 2005). Accidental or merely negligent governmental conduct is insufficient to establish the flagrant misbehavior required to justify dismissal of an indictment. *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008).

Here, defendants focus their argument on several broad categories of evidence, all of which were disclosed by the government before trial: (1) evidence that demonstrates defendants, at times, practiced medicine at AUC facilities; (2) recordings made by a confidential source in which a cooperating witness purportedly made statements inconsistent with her later plea; and, (3) consensual recordings made by the same cooperating witness. In large part, the evidence cited by the defendants does not constitute *Brady* evidence.

As to the first category of evidence, the defendants claim that "any evidence that shows Nikparvar-Fard and his employees were practicing medicine in the ordinary course…" is exculpatory. D.D.E 462 at 22. This is both factually and legally incorrect. The government's theory of the case, and the indictment levied against the defendants, does not allege that medicine was never practiced at AUC facilities. Rather, the government's case rests upon a theory that the defendants' distribution of prescription pain medicine was so far outside the bounds of the accepted practice of medicine that it became criminal. Additionally, the government alleges the defendants' conduct in pre-signing prescription pads for an unlicensed colleague was also criminal.

There is no dispute that, on occasion, the defendants may have sutured a cut finger or swabbed a sore throat. Such evidence is irrelevant, however. In *United States v. De Peri*, 778 F.2d 963 (3d Cir. 1985), the court explained that "[e]vidence that not all vendors were extorted is irrelevant to the charge that the defendants conspired to extort and did extort protection payments from certain vendors." 778 F.2d at 983-984; *see also United States v. Ellisor,* 522 F.3d 1255 (11th Cir. 2008); *United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990); *United States v. Troutman*, 814 F.2d 1428 (10th Cir 1987). The same finding holds true in this case. Here, the government identified specific illegal prescriptions issued to specific patients outside the usual course of professional practice and for no legitimate medical purpose. It is this subset of the patient population that is relevant to the jury's inquiry, and evidence regarding other patients cannot be exculpatory because it is irrelevant.[1]

The second category of evidence, recordings of a cooperating defendant, were produced to the defense nearly a month before the May 2022 trial date. The government acknowledged these recordings should have been turned over sooner, but in any event the defendants received them pre-trial. The Court continued trial an additional seven months, to January 9, 2023, to provide the defense additional time to review the recordings. The defendants have done so, as evidenced by their summary of the witness's statements. D.D.E 462 at 11-12 and 23. The defendants will begin trial with eight months' time in which to review this information and prepare effective cross-examinations of the government witness. Disclosure of impeachment material eight months prior to trial cannot support a *Brady* violation, as there is no prejudice. *Johnson*, 816 F.2d at 924 (3d. Cir. 1987). As the evidence at issue was produced prior to trial,

---

[1] If necessary, the government will file a motion *in limine* to exclude evidence of unrelated cases outside those already identified by the government.

5

and the defendants had additional time to review it and use it effectively at trial, the government

has not suppressed evidence as required to find a *Brady* violation. In any event, there was no

prejudice to the defendants. As the defendants cannot sustain their burden, their motion should

be denied.

Lastly, defendants mischaracterize discovery material in the purported "late productions."

The most blatant example is their repeated claim that the government produced "consensual

recordings" made by a cooperating co-defendant late, and only after repeated requests. D.D.E

462 at 18, 23. Defendant Nikparvar-Fard states, "no explanation was provided as to why the

recordings made by [the witness] were not produced earlier." D.D.E 462 at 18. What the

defendant fails to mention, however, is that none of these purported recordings was successful,

so there was no evidence to produce.[2]

When a defendant seeks the extraordinary remedy of dismissal of an indictment, he bears

a high burden. When the complaint rests upon evidence which was produced by the government

prior to trial, as it was here, the defendant's burden becomes greater. The law requires a showing

of willful misconduct by the government, and prejudice. *Fahie*, 419 F.3d at 255. Here, the

defendant offers only unsupported claims of misconduct, and repeatedly misstates the nature of

previous productions. The record is devoid of any support to the contrary.  Whatever potential

prejudice might have accompanied the government's disclosure of recordings of the cooperating

co-defendant was remedied by this Court's decision to delay trial until January 2023. The

---

[2] Of the approximately 100 "recordings," one is a wrong number call between the witness and an
unknown caller. The remaining "recordings" are automatic system messages alerting callers
(none of whom say anything) that the witness' phone does not have a voicemail box set up, so no
message can be recorded.

defendants point to no other cognizable prejudice.  Having failed to carry their burden, the defendants' motions must be denied.

**B.  <u>Motion to Compel Discovery</u>**

Defendants alternatively seek an order compelling the production of records related to confidential sources and informants used during the investigation into defendants' activities at AUC. D.D.E 462 at 19. Defendant Nikparvar-Fard's complaint, presumably joined by the remaining defendants, primarily focuses on source 82467. This individual initially served as a source of information during the investigation but was later charged separately as a co-conspirator for their involvement in criminal activity at AUC. The government's discovery production included reports of interviews conducted with this person regarding their knowledge of AUC's operations, charging documents, a copy of the individual's plea agreement with the government, and reports reflecting information this person provided while still working as a source. The government reviewed the information provided by the witness in the unrelated investigations to ensure there was no exculpatory material related to AUC. Cognizant that the witness may properly be impeached with their cooperation, the government alerted counsel that this person provided information in several unrelated and ongoing investigations but declined to provide further information regarding those cases.

The identity of subjects in unrelated criminal investigations is both irrelevant to the defendant's stated purpose and would prejudice those ongoing investigations. The government is unaware of any legal authority – and the defendant cites none – which requires the disclosure of the identity of subjects in unrelated and ongoing investigations. To the contrary, where defense counsel can cross examine a witness with his cooperation agreement, failure to disclose details

concerning that witnesses' work as an informant in unrelated matters does not violate *Brady*. *See United States v. Harmon*, 833 F.3d 1199, 1205-06 (9th Cir. 2016).

Perhaps recognizing the weakness of his initial position, yet continuing to cite no supporting legal authority, Nikparvar-Fard also claims he is entitled to the requested information because defendant may wish to call these individuals during the defense case. D.D.E 462 at 20. "However, there is no requirement that the government must disclose to the defense that material which would allow the defendant to impeach his own witness." *United States v. Kimley*, 60 F. App'x. 369, 371 (3d Cir. 2003). *See also United States v. Presser*, 844 F.2d 1275 (6th Cir. 1988) (government not obligated to disclose evidence that was merely impeaching and not material or exculpatory regarding defense witnesses); *United States v. Garcia-Martinez*, 730 F. App'x. 665, 678-79 (10th Cir. 2018) (noting that there is no "controlling precedent" that would oblige the government under *Brady* "to disclose information that is exculpatory – in a purely impeachment sense – with respect to a defense witness").

The government satisfied its discovery obligations regarding the one confidential source who may testify at trial. The defendant's request for information about this source's involvement in other investigations serves no legitimate purpose, amounts to nothing more than a fishing expedition, and risks thwarting those unrelated, ongoing investigations. Likewise, the government has never been required to provide purely impeachment information regarding non-testifying sources. The defendants' request for information about individuals who will not be witnesses at trial should also be denied.

C.  **Motion to Dismiss for Speedy Trial Violations**[3]

Defendant Nikparvar-Fard, ignoring the complex nature of this case, the impact of the Covid-19 pandemic upon the court system, and his own repeated requests for additional time, claims the government has "eviscerated" his constitutional right to a speedy trial such that dismissal is the only appropriate remedy. D.D.E 462 at 28, 31. The defendant, and the defendants joining in his motion, are mistaken. There has been no violation of the defendant's speedy trial rights, so his motion should be denied.

The Speedy Trial Act provides that the "trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C.§ 3161(a). The rule is violated if within the 70-day period, as extended by any excludable delay, the trial does not commence. *See* 18 U.S.C. § 3161(c)(1); *United States v. Moran*, 998 F.2d 1368, 1370 (6th Cir. 1993). "When filing a motion to dismiss the indictment based on a violation of the Speedy Trial Act, '[t]he defendant shall have the burden of proof.' 18 U.S.C. § 3162(a)(2)." *United States v. Murphy*, 241 F.3d 447, 453-54 (6th Cir. 2001). The Speedy Trial Act makes excludable "[a]ny period of delay resulting from other proceedings concerning the defendant," including "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). This includes motions addressing pretrial detention. *United States v. Lattany*, 982 F.2d 866, 872 (3d. Cir. 1992). In

---

[3] The government incorporates the relevant portions of its response to defendant Mitchell White's separate motion to dismiss, below, which overlaps issues presented by defendant Nikparvar-Fard.

addition, the Speedy Trial Act excludes "any delay from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).

In addition to the Speedy Trial Act, the Sixth Amendment also provides speedy trial rights to defendants.  However, where the time limits under the Speedy Trial Act have been satisfied, it would be unusual to find a violation of the constitutional right to a speedy trial. *United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009) citing *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002).  In *Barker v. Wingo*, the Supreme Court established a four-factor test to determine whether a defendant's constitutional right to a speedy trial has been violated. 407 U.S. 514 (1972).  When evaluating a Constitutional speedy trial claim, courts are required to determine: (1) the length of delay before trial; (2) the reason for the delay, and, specifically, whether the government or defendant is more to blame; (3) the extent to which the defendant has asserted his right to a speedy trial; and (4) the amount of prejudice suffered by the defendant.  *Id*. at 530-33.

In *Doggett v. United States*, 505 U.S. 647, 655 (1992), the Supreme Court, noting that "pretrial delay is often both inevitable and wholly justifiable," provided further guidance as to how to apply the *Barker* balancing test. *Doggett*, 505 U.S. at 656. It found that if the delay was sufficiently long, a *Barker* inquiry was necessary. Although delays long enough to precipitate a *Barker* inquiry give rise to a presumption of prejudice, "such prejudice alone cannot carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Dogget*, 505 U.S. at 655-656.  *See also*, *Hakeem v. Beyer*, 990 F.2d 750, 770 (3d Cir. 1993) (holding that "no one factor is

dispositive or 'talismanic.").  In cases where the government is at fault for the delay, the prejudice factor weighs more heavily than in situations where the government has acted with "reasonable diligence." *Id*. 655-56.  In the former case, prejudice is presumed, while in the latter a defendant's claim will likely fail in the absence of a showing of actual prejudice. *Id*. at 656.

    1.  <u>Length of The Delay</u>

Courts are first required to determine "whether the delay is long enough to trigger analysis of [the] other *Barker* factors."  *United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014).  "At a minimum, the delay is measured from the date of formal accusation, i.e., from the earliest date of arrest or indictment until the commencement of trial."  *Hakeem*, 990 F.2d at 760. When the delay between indictment and trial is greater than one year, generally a further review of the *Barker* factors is warranted.  *Velazquez*, 749 F.3d at 174 (citing *Doggett*, 505 U.S. at 652). A delay of fourteen months is sufficient to trigger review of the remaining *Barker* factors, and once that threshold is passed, "the state, not the prisoner, bears the burden to justify the delay." *Hakeem*, 990 F.2d at 770.  The delay in this case will be approximately 48 months by the time of trial, thus a further *Barker* inquiry is warranted.

    2.  <u>Reasons for Delay</u>

The Supreme Court has noted that "different weights should be assigned to different reasons for delay."  *Barker*, 407 U.S. at 531.  While a deliberate attempt to delay the trial should be weighted heavily against the government, a "more neutral reason such as negligence should be weighted less heavily."  *Id*.  A "valid reason" such as defendant's requests for continuance, or a continuance for the complexity of the case, "should serve to justify appropriate delay."  *Id*. Delay "'caused by the defense weighs against the defendant, including delay caused by the defendant's counsel.'"  *United States v. Battis*, 589 F.3d 673, 679-80 (3d Cir. 2009); *Vermont v.*

*Brillon*, 556 U.S. 81, 90 (2009); *Boyer v. Louisiana*, 569 U.S. 238, 240 (2013) (denying writ of certiorari as improvidently granted because "the single largest share of the delay in this case was the direct result of defense requests for continuances"). In "evaluating this factor, we subtract the amount of delay caused by the defendant from the delay caused by the Government." *Battis*, 589 F.3d at 680.

Here, the Court declared this case a complex matter and set an initial trial date of April 20, 2020. The vast majority of the remaining delays – over a year - were caused by either the unprecedented shut down of the court system during the Covid-19 pandemic, the request of the defendants, or a combination of both. There were also numerous motions filed, including multiple requests by Nikparvar-Fard for reconsideration of his detention. This Court correctly determined each of these delays was excludable from Speedy Trial calculations. The remaining delay from May 2022 until January 2023 was granted, in part, so defendants could review additional material provided by the government. The Court found that this latest continuance should also be excluded from all computations of time under the Speedy Trial Act, 18 U.S.C. § 3161. D.D.E 418.

Although the defendant has repeatedly insinuated deliberate and sinister explanations for the government's production of discovery in this case, he cannot credibly claim that prosecutors acted in a deliberate attempt to delay proceedings. In the absence of such showing, and in light of numerous, valid reasons for repeated delays in this complex case, the reasons for the delay should be weighed in favor of the government.

3. <u>Defendant's Assertion of Speedy Trial Rights</u>

The third *Barker* factor is whether the defendant has asserted his right to a speedy trial. The Supreme Court determined that simply because the defendant moved for a dismissal on

speedy trial grounds, "that finding alone does not establish that respondents have appropriately asserted their rights." *United States v. Loud Hawk*, 474 U.S. 302, 314, 106 S. Ct. 648, 655, 88 L. Ed. 2d 640 (1986).  Referencing *Barker*, the Supreme Court stated that although "such assertions from defendants are 'entitled to strong evidentiary weight' in determining whether their rights to a speedy trial have been denied[,] . . . These assertions, however, must be viewed in the light of respondents' other conduct." *Id*. at 655-56 (quoting *Barker v. Wingo* 407 U.S., at 531–532).

While continuing to mischaracterize the government's conduct and minimize the impact of Covid-19, defendant offers a revisionist history where he has at all times demanded a trial. In evaluating this factor, the Court should examine "the frequency and force of such assertions." *Velazquez*, 749 F.3d at 183. A review of the docket in this case shows that the defendant has repeatedly acquiesced to continuances sought by other defendants, or otherwise actively sought them himself.

4. Prejudice

The Supreme Court in *Doggett* identified three types of harm resulting from unreasonable delay between accusation and trial: "(1) "oppressive pretrial incarceration;" (2) "anxiety and concern of the accused;" and (3) the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence" *United States v. Claxton,* 766 F.3d 280, 296 (3d Cir. 2014) citing *Doggett*, 505 U.S. at 654.  The Supreme Court has noted that the mere "possibility of prejudice is not sufficient to support [the] position that [a defendant's] speedy trial rights were violated." *Loud Hawk*, 474 U.S. at 315. Rather, where the government is "reasonably diligent" in its efforts, the burden is on the defendant to establish prejudice to his defense from a delay before trial.  *Velazquez*, 749 F.3d at 184; *See also, Hakeem,* 990 F.2d 750, 760; *United States v. Harris*, 566 F.3d at 432 (5th Cir. 2009) (noting that prejudice may be presumed only if

the first three *Barker* factors "weigh heavily" in the defendant's favor and that defendant must demonstrate actual prejudice if they do not) citing *U.S. v. Parker*, 505 F.3d 323, 328 (5th Cir. 2007).  This factor will weigh in favor of the government if it can demonstrate that the defendant's defense is "unimpaired" by the delay. *Velazquez*, 749 F.3d at 185.

Making only generalized assertions that he has had to repeatedly alter his defense and has suffered generalized anxiety and financial strain, Nikparvar-Fard fails to demonstrate actual prejudice in this case, and the first three factors do not "weigh heavily" in his favor. *Harris*, 566 F.3d at 432. While the government concedes that recordings of cooperating co-defendants made by an undercover source should have been produced sooner, which contributed to the most recent continuance request, there has been no other conduct by the government which the defendant can point to that prejudiced his defense.

For example, although the defendant was incarcerated for a lengthy period, much of that incarceration was the result of his arrest and conviction for threatening to have a United States Marshal shot in the head. The remaining delay was the result of the Covid-19 pandemic and the attendant shut down of all court operations. In any event, any such prejudice was remedied by the Court's order releasing Nikparvar-Fard to home confinement.

The defendant further points to his inability to work and continue his medical practice, continued legal fees, and the stigma associated with this case as having a negative effect upon his mental health. This claim, of course, ignores the defendant's inability to practice medicine based upon his felony conviction for threatening a U.S. Marshal. In any event, "[v]ague allegations of anxiety are insufficient to state a cognizable claim" of prejudice. *Hakeem*, 838 F.2d at 762.

Lastly, when the defendant's mischaracterizations of the discovery process are swept away, the only potentially cognizable claim of defense impairment relates to the government's

14

pretrial production of hours of undercover recordings in which cooperating co-defendants make purportedly inconsistent statements. The defendant, by his own admission, has reviewed these recordings with sufficient time to make effective use of them at trial.

Where, as here, the government was "reasonably diligent" in its efforts, the burden remains on the defendant to demonstrate actual prejudice to his defense from a delay. *Velazquez*, 749 F.3d at 184. He has failed to meet this burden, therefore his motion to dismiss should be denied.

### D.  White's Motion to Dismiss Should be Denied

By his own admission, White has moved the Court to postpone trial at least three times. Having received the postponements that he sought, and while minimizing the impact of COVID-19 on Court operations, he now asks the Court to dismiss the superseding indictment, claiming that the government has violated his speedy trial rights by not bringing the case to trial sooner. In essence, White wants to have his cake and eat it, too. However, as is fully explained below, he has failed to identify any grounds for dismissal of the charges against him.

#### 1.   White Is Not Entitled to Dismissal Under the Sixth Amendment

Mitchell White has not been denied his constitutional right to a speedy trial. Most of the delay in bringing the case to trial was the result of the complexities of the case and the impact of COVID-19 on Court operations, and not the result of a deliberate effort by the government to delay the trial. A brief review of the procedural history of this case supports this conclusion.

On January 9, 2019, the defendant was charged in the superseding indictment with three counts of aiding and abetting the rental, use, and maintenance of certain AUC facilities for the purpose of unlawfully distributing controlled substances, including oxycodone and

methadone, Schedule II controlled substances (Counts One through Three).  In addition, White was charged in Count Five with conspiring with co-defendant Nikparvar-Fard and others to pre-sign prescriptions for a physician, Highland Campbell, whose DEA license was suspended so that Campbell could continue to issue prescriptions for controlled substances to AUC customers.

The government filed a motion to declare this matter a complex case on February 11, 2019.  Subsequently, the Court granted that motion, and a jury trial was scheduled for April 20, 2020.  On March 10, 2020, White moved for a continuance of the trial date on the grounds that he did not have sufficient time to review 46 patient files that had been produced two weeks prior to his motion and almost two months prior to the trial date.  These patient files were discussed at length in the government's expert report and were previously made available to defense counsel for review.  In any event, the trial date was postponed due to the impact of COVID-19 on court operations.  The trial was continued from April 20, 2020, to June 15, 2020, to December 7, 2020, to June 7, 2021, to October 4, 2021, to January 20, 2022, and to May 31, 2022, all due to COVID-19.

Notably, White joined other co-defendants in requesting a continuance of the January 20, 2022 trial date due to the likelihood of disruption of the trial from an anticipated surge of COVID-19 cases following the holidays.  White also joined other co-defendants in requesting a continuance of the May 20, 2022 trial date, in part, to await the U.S. Supreme Court decision in *Ruan v. United States, 142 S. Ct. 2370 (2022)* (involving the scope of the good faith defense when a physician is alleged to have prescribed controlled substances outside the usual course of professional practice).  The movants asserted that a continuance was necessary because the decision could significantly impact the trial.

Based on this history, White's claim that the delay in bringing the case to trial was caused by the government does not hold up.  In fact, the majority of the delay was caused by COVID-19, and he does not dispute that such delay was unavoidable under the circumstances. Accordingly, only a portion of the delay from May 31, 2022 to the current trial date of January 9, 2023 can be attributed to the government, and none of it can be shown to be the result of a deliberate effort on the part of the government to delay the trial.  On the contrary, the so-called "avalanche of discovery", D.D.E. 464-1 at 6, that was produced in advance of the May 31, 2022 trial date was a result of the government's diligent trial preparations.  In preparing for trial, the government recognized that additional discovery should be produced, and it did so as promptly as possible.  In short, the delay in this case was valid, caused by the complexity of the case, the impact of COVID-19, and the defendant's multiple requests for continuances.

Those continuance requests also rebut White's assertion of his speedy trial rights. "[W]hen a defendant requests a speedy trial, but 'through contrary actions ... evidences an unwillingness to commence with the trial requested, [the] request carries minimal weight.'" *Battis*, 589 F.3d at 681 (citing *Hakeem*, 990 F.2d at 765).  Here, White claims to have asserted his speedy trial rights while simultaneously seeking continuances of the trial date.  This inconsistency should lead the Court to give minimal weight to his claims.  Like the defendant in *Barker*, White apparently "hoped to take advantage of the delay in which he acquiesced, and thereby obtain a dismissal of the charges."  407 U.S. at 535.

Also, like the defendant in *Barker*, White has not suffered any prejudice as a result of the delay in bringing this case to trial.  Because this case was delayed for valid reasons, prejudice should not be presumed.  Because prejudice is not presumed, the burden is on the defendant to

establish prejudice to his defense from a delay before trial.  *Velazquez*, 749 F.3d at 184; *see also Hakeem,* 990 F.2d at 760.  This is something the defendant has not, and cannot, do.

White has never been incarcerated in connection with these charges. Moreover, while he complains that he was fired from his job and suffers from anxiety and depression as a result of the charges in this case, D.D.E. 464-1 at 8-9, such complaints are not sufficient to show prejudice.  "Vague allegations of anxiety are insufficient to state a cognizable claim."  *Hakeem*, 838 F.2d at 762.  Moreover, a "defendant must produce evidence demonstrating that his anxiety exceeded that which is "inevitable in a criminal case," *id.,* and must establish "psychic injury," *id.* (quoting *United States v. Dreyer*, 533 F.2d 112, 115-16 (3d Cir. 1976)) resulting from the delay.  The defendant has not produced such evidence.

In addition, while he claims that his ability to defend the charges has been impaired, White fails to demonstrate any actual impairment, other than to offer hypotheticals ("counsel may well find that defense witnesses . . . are no longer available or do not have the same recall" and that "[p]otential leads and witnesses may be unfindable.")  D.D.E. 464-1 at 9 (emphasis added).  In order to establish prejudice, allegations must be specific.  "Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice.  Defendants must show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided the defense."  *United States v. Trammell*, 133 F.3d 1343, 1351 (10th Cir. 1998) (holding that defendant who alleged that two of his witnesses had died did not establish prejudice because he had not shown how their testimony would have aided the defense).

Because there were valid reasons for the delays in this case, some of which were caused by White, and because he has not been prejudiced, White has failed to show that his constitutional right to a speedy trial has been violated.

        **2.**      <u>White Is Not Entitled to Dismissal Under the Speedy Trial Act</u>

Mitchell White has not been denied his statutory right to a speedy trial.  All of the delay in this case is excluded from the Speedy Trial Act because, due to the complexity of the case and the impact of COVID-19 on court operations, the Court repeatedly found that the ends of justice served by continuing the case outweighed the best interest of the public and the defendant in a speedy trial.  18 U.S.C. § 3161(h)(7)(A).  In addition, the time from the filing of pretrial motions, including White's multiple pending motions, "through the conclusion of the hearing on, or other prompt disposition of, such motion" is also excluded.  18 U.S.C. § 3161(h)(1)(D).  Consequently, there has been no violation of the Speedy Trial Act.

White tries to get around these exclusions by accusing the government of lack of diligent preparation.  In doing so, White completely fails to acknowledge the realities of this case, not to mention his own role in delaying trial.  White does not dispute that this case is complex, nor can he.  This case was the result of a long-term investigation involving years of criminal conduct by multiple defendants at multiple locations, which generated voluminous evidence.  As a result, this Court found that the "the case is unusual and complex, due to the number of defendants, the nature of the prosecution, and the existence of novel questions of fact or law, making it unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the basic time limits established" by the Speedy Trial Act.  D.D.E. 134 at 1.  White did not object to this finding.  In addition, White cannot dispute that trial was not possible given the shuttering of court operations necessitated by COVID-19.  In fact, as is discussed above, White joined other

co-defendants in requesting a continuance of the January 20, 2022 trial date due to the likelihood of disruption of the trial from an anticipated surge of COVID-19 cases following the holidays. Indeed, White repeatedly sought and received continuances of the trial date. Consequently, regardless of White's complaints about the timing of certain discovery, this case would not have been tried earlier given the complexities of the case, the impact of COVID-19 on court operations, and the defendant's own requests to postpone trial.

In any event, White's complaints about discovery do not make out a lack of diligent preparation by the government under the Speedy Trial Act. Indeed, it was the active trial preparation of government counsel that led to the production of additional discovery in advance of the May 31, 2022 trial date. Contrary to White's effort to turn the government's production of discovery into a reason to end the prosecution of very serious crimes, courts have repeatedly held that an "ends of justice" continuance was not precluded simply because the government failed to produce discovery, absent a showing of "bad faith" or "chronic discovery abuses." *See United States v. Cianciola*, 920 F.2d 1295, 1300 (6th Cir. 1990) (affirming the district court's exclusion of time pursuant to an "ends of justice" continuance); *United States v. Esquilin*, 205 F.3d 1325 (2d Cir. 2000) (affirming the district court's exclusion of time pursuant to an "ends of justice" continuance where the district court found that the government attorney had forgotten about certain material and therefore the government's failure to comply with discovery rules was "inadvertent"); *United States v. Huff*, 246 F. Supp. 2d 721, 726-27 (W.D. Ky. 2003) (excluding continuance where the government failed to produce expert disclosures in compliance with the court's scheduling order and court found that there was no evidence that the government "committed chronic discovery abuses or acted in bad faith.").

Similarly, here, there is no evidence that the government acted in bad faith, nor is there evidence of "chronic" discovery violations.  In fact, White's complaints about discovery are overplayed.  For example, although White complains about the "late" production of certain patient files, the reality is that the files were the defendants' own records, seized from their facilities, and with which White and the other defendants were very familiar.  In addition, regardless of when the patient files were affirmatively produced, the government made all of the files available for review from the earliest stages of discovery.  White did not make any effort to inspect the files seized by the government.

White has also failed to show bad faith on the part of the government with respect to the loss of the rough notes from his proffer, during which White detailed, among other things, his participation in the scheme to pre-sign prescription pads for Campbell.  As previously explained to White, the agent who prepared the DEA-6 for the Mitchell White proffer took notes on his computer and, after the proffer ended, used those notes to write up the DEA-6, leaving no handwritten or computer-generated notes.  D.D.E. 464-4 at 11.  While the government concedes that the notes should have been preserved to allow *in camera* review, if necessary, the failure to preserve the notes does not warrant a finding of bad faith on the part of the government.  There is no evidence of "official animus towards" White or a "conscious effort to suppress exculpatory evidence."  *California v. Trombetta*, 467 U.S. 479, 488-89 (1984); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  At most, the government was negligent in failing to preserve the notes, which is not sufficient to establish bad faith.  *See Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002) ("[W]hen the government is negligent, or even grossly negligent, in failing to preserve potentially exculpatory evidence, bad faith is not established."); *United States v. Femia*, 9 F.3d 990, 995 (1st Cir. 1993) ("[G]ross negligence" does not establish "bad faith.").  Moreover, White

has failed to show how the unavailability of the notes in any way delayed the trial of this case. Accordingly, the unavailability of the rough notes does not support a finding that the government failed to diligently prepare for purposes of the Speedy Trial Act.[4]

White also complains because the government produced, in advance of trial, evidence that he claims is exculpatory. This complaint also fails. The material that White claims is exculpatory is nothing of the sort. Evidence that the defendant occasionally did not deal drugs to patients, is not probative of whether the defendant repeatedly dealt drugs to patients on hundreds of other occasions, as the evidence will show that he did. Nor does the evidence suggest that the defendant did not participate in a drug conspiracy by signing blank prescriptions so Campbell could prescribe controlled substances to AUC patients without any legal authority to do so. Accordingly, White has not met his burden of proving chronic discovery violations or bad faith on the part of the government. Thus, White cannot show a lack of diligent preparation by the government.

Instead, based on the complexities of the case and the impact of COVID-19, the Court repeatedly found that the that the ends of justice served by continuing the case outweighed the best interest of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). Consequently, White's attempt to dismiss the charges against him under the Speedy Trial Act should be rejected.

---

[4] It is worth noting that White has also failed to show prejudice. White has the DEA-6 from the proffer, which incorporates the rough notes, has access to the notes taken by his former counsel during the proffer., D.D.E. 464-3 at 3, and will have the opportunity to examine the agent at trial if he chooses.

### E.  **Defendants Are Not Entitled to Dismissal Under Rule 48**

Defendants' motions to dismiss pursuant to Federal Rule of Criminal Procedure 48(b) should also be denied.  This rule provides that "[t]he court may dismiss an indictment . . . if unnecessary delay occurs in . . . bringing a defendant to trial."  Fed. R. Crim. P. 48(b).  "Although the rule confers discretion upon the district judge, a Rule 48(b) dismissal 'should be imposed only in extreme circumstances.'"  *United States v. Huntley*, 976 F.2d 1287, 1291 (9th Cir. 1992) (quoting *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 737 (9th Cir. 1989)); *see United States v. Yuan Qing Jaing*, 214 F.3d 1099, 1101, 1103 (9th Cir. 2000); *United States v. Carlone*, 666 F.2d 1112, 1116 (7th Cir. 1981).  This principle is "especially true when a dismissal is with prejudice," which it appears the defendant is seeking.  *Jaing*, 214 F.3d at 1101 (quoting *United States v. Gatto*, 763 F.2d 1040, 1050 (9th Cir. 1985)).  A court's inherent power to dismiss an action pursuant to Rule 48, "should be utilized with caution, and only after a forewarning to prosecutors of the consequences." *United States v. Simmons*, 536 F.2d 827, 836 (9th Cir. 1976); *United States v. Clay*, 481 F.2d 133, 138 (7th Cir. 1973).

The circumstances in this case are far different than those in *United States v. Zabady*, 546 F. Supp. 35 (M.D. Pa. 1982), the non-binding decision that the defendants offer in support of their Rule 48(b) argument.  In *Zabady,* the government needed more than a year of additional time after indictment to gather the evidence necessary to try the case. *Zabady*, 546 F. Supp. at 38-39 (explaining that after indictment, the government had requested substantial additional time to secure sworn witness statements through letters rogatory).  The *Zabady* court expressed particular concern that the one year of prospective delay required by the government would have resulted in "an open-ended indictment process" in which the government had "unlimited time" to "arrange its case."  *Id*. at 39.  No such concern is implicated here.    For the same reasons that are

explained above, defendants failed to demonstrate any extreme circumstances warranting

dismissal under this rule.  Accordingly, their respective motions to dismiss should be denied.

## IV.     <u>CONCLUSION</u>

The defendants' request for extraordinary relief carries with it a commensurately high

burden of proof. As the defendants cannot meet that burden, there is no basis to grant their

respective motions to dismiss the indictment. For the foregoing reasons, the government

respectfully requests this court deny the defendants' motions.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


*/s/ Christopher E. Parisi*
CHRISTOPHER PARISI
MARY KAY COSTELLO
Assistant United States Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Response was served by electronic filing (ECF) on all counsel of record.


   */s/ Christopher E. Parisi*
CHRISTOPHER E. PARISI
Assistant United States Attorney


Date: November 4, 2022